UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

IN RE STATE STREET BANK AND
TRUST CO. FIXED INCOME FUNDS            MDL No. 1945
INVESTMENT LITIGATION

_____

MEMORIAL HERMANN HEALTHCARE
SYSTEM AND THE HEALTH
PROFESSIONALS INSURANCE COMPANY,
LTD.,

          Plaintiffs,                    No. 08 Civ. 5440 (RJH)

v.                                       **ORAL ARGUMENT REQUESTED**

STATE STREET BANK & TRUST
COMPANY,

          Defendant.

_____

### STATE STREET'S OPPOSITION TO MEMORIAL HERMANN'S MOTION TO AMEND RESPONSE TO RULE 56.1 STATEMENT OF FACTS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................... 1

I.     THERE IS NO "UNINTENTIONAL, INADVERTENT ADMISSION;" MEMORIAL
       HERMANN AFFIRMATIVELY ASSERTED THAT CAMBRIDGE FINANCIAL WAS
       ITS AGENT IN FIVE VERSIONS OF ITS COMPLAINT AND THREE OTHER
       FILINGS WITH THE COURT ......................................................................... 3

       A.      Memorial Hermann's Agency Admissions Are Binding ........................................ 6

II.    THE UNDISPUTED FACTS ESTABLISH THAT CAMBRIDGE FINANCIAL WAS
       MEMORIAL HERMANN'S AGENT AS A MATTER OF LAW ................................... 7

       A.      The Unrefuted Evidence Shows That Cambridge Financial Was In Fact Memorial
               Hermann's Agent ...................................................................................... 8

       B.      Memorial Hermann Offers No Evidence In Support of Its Argument That Its
               Admission That Cambridge Financial Was Its Agent Was Unfounded ............... 11

III.   MEMORIAL HERMANN SHOULD NOT BE PERMITTED TO WITHDRAW ITS
       AFFIRMATIVE ADMISSIONS THAT CAMBRIDGE FINANCIAL WAS ITS
       AGENT ..................................................................................................... 13

CONCLUSION ..................................................................................................... 15

25492192_3

# TABLE OF AUTHORITIES

Page(s)

CASES

*Andrews v. Metro N. Commuter R.R. Co.*,
  882 F.2d 705 (2d Cir. 1989)..................................................................5

*Arlin-Golf, LLC v. Vill. of Arlington Heights*,
  No. 09 Civ. 1907, 2010 WL 918071 (N.D. Ill. Mar. 9, 2010) ...................7

*Beckenstein v. Potter & Carrier, Inc.*,
  464 A.2d 6 (Conn. 1983) ........................................................................7

*Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*,
  113 S.W.3d 889 (Tex. Ct. App. 2003) .............................................8, 11, 12

*Coca-Cola Bottling Co. v. Coca-Cola Co.*,
  123 F.R.D. 97 (D. Del. 1988) ..............................................................14

*Daily Int'l Sales Corp. v. Eastman Whipstock, Inc.*,
  662 S.W.2d 60 (Tex. Ct. App. 1983) ....................................................12

*Hand v. Dean Witter Reynolds Inc.*,
  889 S.W.2d 483 (Tex. Ct. App. 1994) .....................................................8

*In re Fisherman's Wharf Fillet, Inc.*,
  83 F. Supp. 2d 651 (E.D. Va. 1999) .....................................................14

*In re Refco Capital Markets, Ltd. Brokerage Customer Sec. Litig.*,
  No. 06 Civ. 643(GEL), 2008 WL 4962985 (S.D.N.Y. 2008)...................5

*Intermedics, Inc. v. Grady*,
  683 S.W.2d 842 (Tex. Ct. App. 1984) ..................................................10

*Landry v. United States*,
  815 F. Supp. 1000 (E.D. Tex. 1993) .......................................................7

*N.L.R.B. v. Consol. Bus Transit, Inc.*,
  577 F.3d 467 (2d Cir. 2009)...................................................................7

*Oropeza v. AppleIllinois, LLC*,
  No. 06 Civ. 7097, 2010 WL 55655 (N.D. Ill. Jan. 5, 2010) ...................6

*Park Place Corp. v. Indus. P.F., Inc.*,
  No. 6:06 Civ. 02205(HMH), 2007 WL 1462188 (D.S.C. May 16, 2007)................7

*Rash v. J.V. Intermediate, Ltd.*,
  498 F.3d 1201 (10th Cir. 2007) ...................................................................12

*Robles v. Consol. Graphics, Inc.*,
  965 S.W.2d 552 (Tex. Ct. App. 1997) ......................................................8, 12

*Santa Fe Tech., Inc. v. Argus Networks, Inc.*,
  42 P.3d 1221 (N.M. Ct. App. 2001) ............................................................12

*Spikes v. Bolivar County*,
  No. 2:07 Civ. 22(MPM)(SAA), 2008 WL 2797014 (N.D. Miss. July 8, 2008) ......................14

*United States v. McKeon*,
  738 F.2d 26 (2d Cir. 1984).........................................................................15

*Zimmerman v. Cambridge Credit Counseling Corp.*,
  529 F. Supp. 2d 254 (D. Mass. 2008) ........................................................14

OTHER AUTHORITIES

3 C.J.S. *Agency* § 550 (2010)...................................................................7, 9

3 C.J.S. *Agency* § 573 (2010).....................................................................10

3 Texas Jurisprudence 3d *Agency* § 1 (3d ed. 2010)...................................13

3 Texas Jurisprudence 3d *Agency* § 3 (3d ed. 2010)...................................11

Fed. R. Civ. P. 11(b) ....................................................................................3

Fed. R. Civ. P. 36 .......................................................................................13

Restatement (Third) of Agency § 1.01 cmt. c (2006) ..................................12

Restatement (Third) of Agency § 5.03 cmt. ...............................................12

25492192_3

Defendant State Street Bank and Trust Company ("State Street") respectfully submits this opposition to Memorial Hermann Healthcare System's ("MHHS") and the Health Professionals Insurance Company, Ltd.'s ("HePIC") (collectively, "Memorial Hermann") Motion to Amend Response to Rule 56.1 Statement of Facts ("MH Mem.").

## PRELIMINARY STATEMENT

In its Motion for Summary Judgment, State Street provided compelling and unrebutted evidence that by the end of July 2007, Memorial Hermann's investment advisor, Ernest Liebre of Cambridge Financial Services, Inc. ("Cambridge Financial"), based on information that State Street had provided him to pass along to Memorial Hermann as its agent, was urging Memorial Hermann to redeem immediately out of the Limited Duration Bond Fund ("LDBF" or the "Fund"). Memorial Hermann chose not to heed Mr. Liebre's advice, and instead made a new investment decision to continue to invest in LDBF in anticipation that the Fund would recoup its losses. On that basis, State Street moved for summary judgment, citing Memorial Hermann's failure to mitigate its losses.

Now, six weeks after completion of the briefing on State Street's Motion for Summary Judgment, Memorial Hermann has moved the Court to allow it to rescind its admission that Cambridge Financial was its agent. Apparently, Memorial Hermann has stumbled to the fact that the information State Street provided to Mr. Liebre, if attributed to Memorial Hermann, will compel summary judgment in State Street's favor. Memorial Hermann's pretext for urging the Court to rescind its admission as to agency is that the admission was an "unintentional and inadvertent" slip in its response to State Street's Rule 56.1 Statement of Undisputed Material Facts in Support of Motion for Summary Judgment ("Rule 56.1 Statement"). MH Mem. at 2.

In truth, Memorial Hermann's admission that Cambridge Financial was its agent was neither unintentional nor inadvertent, but rather was unequivocally stated, not only in Memorial

Hermann's Response to State Street's Rule 56.1 Statement, but also in numerous other pleadings and filings, on many occasions.  Thus, it is not the case that Memorial Hermann has learned new information during the discovery period and, as a result, needs to amend a prior pleading in order to create an accurate record.  Moreover, Memorial Hermann mischaracterizes the agency relationship at issue, stating that Mr. Liebre of Cambridge Financial could not be an agent because he had no authority to act on Memorial Hermann's behalf.  But that is not the scope of the agency at issue; rather, the record demonstrates, both by virtue of Memorial Hermann's numerous admissions and also by the testimony and documents, that Cambridge Financial was Memorial Hermann's agent for, among other things, purposes of receiving and passing along investment information from State Street.  That is the scope of the agency at issue, not whether Cambridge Financial could bind Memorial Hermann.

Moreover, even if Memorial Hermann had not so resolutely admitted the agency on so many occasions, the plain truth is that Cambridge Financial <u>was</u> Memorial Hermann's agent for purposes of receiving and transmitting investment information.[1]  The unrebutted record shows that Mr. Liebre, as Memorial Hermann's investment advisor, was at all material times the interface between State Street and Memorial Hermann.  Indeed, it was Mr. Liebre who requested and received State Street's response to Memorial Hermann's Request for Proposal in the first

---

[1] Memorial Hermann admits – even in its proposed amended Response to State Street's Rule 56.1 Statement – that Cambridge Financial was its investment advisor.  In that capacity, as Memorial Hermann acknowledges, Cambridge Financial was to "provide professional advice and assistance in the selection and oversight of Memorial Hermann's investments."  MH Mem. at 6; *see also id.* at 3 (asserting that one of Cambridge Financial's roles was to provide "monitoring and quarterly reporting" on investment performance).  In performing that role, Cambridge Financial requested information from various asset managers, such as State Street, to inform its investment advice.  *See, e.g.*, Exs. 1 and 2 (Investment Subcommittee minutes detailing Cambridge Financial's presentations); Ex. 3 (Cambridge Financial presentation book for Investment Subcommittee).  Exhibit numbers herein refer to exhibits to the Declaration of Harvey J. Wolkoff, dated September 30, 2010.

place; who requested and received the LDBF holdings data; who recommended LDBF to Memorial Hermann; who thereafter was in communication with State Street and to whom State Street transmitted important information for communication to Memorial Hermann.  In light of this undisputed record, it is entirely unsurprising not only that Memorial Hermann freely admitted the agency relationship in its various submissions to the Court, but also that Memorial Hermann's own executives and Investment Subcommittee members confirmed the agency in their deposition testimony, acknowledging that Cambridge Financial's receipt and transmission of such investment information was part of Mr. Liebre's job.  In short, the issue of Cambridge Financial's agency is well established in the uncontroverted record.  Memorial Hermann's untimely, groundless motion should not be granted, and in fact is frivolous.

I.     **THERE IS NO "UNINTENTIONAL, INADVERTENT ADMISSION;" MEMORIAL HERMANN AFFIRMATIVELY ASSERTED THAT CAMBRIDGE FINANCIAL WAS ITS AGENT IN FIVE VERSIONS OF ITS COMPLAINT AND THREE OTHER FILINGS WITH THE COURT**

Memorial Hermann's request conflicts with <u>all</u> of its previous submissions to the Court, which repeatedly concede that an "agent" is precisely what Cambridge was.[2]

*Statements from Memorial Hermann's Original Petition, First Amended Complaint and Second Amended Complaint*

- "In January of 2003, **Cambridge contracted to act as Memorial Hermann's agent** and to provide certain financial advisory services to Memorial Hermann.  Among other things, Cambridge was to monitor Memorial Hermann's investments, as well as to assist with the selection and replacement of fund managers that handled Memorial Hermann's investments.  Compl. ¶ 6 (emphasis added)[3]; *see also* FAC ¶ 7;[4] SAC ¶ 8.[5]

---

[2] Presumably, these admissions were made "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . ."  Fed. R. Civ. P. 11(b).

[3] Memorial Hermann's original Complaint, filed on Nov. 5, 2007 (Doc. No. 1 Ex. A in 07-cv-4089 (S.D. Tex.)), is attached hereto as Ex. 4.

[4] "FAC" refers to Memorial Hermann's First Amended Complaint, filed on March 4, 2008 (Doc. No. 37 in No. 07-cv-4089 (S.D. Tex.)), attached hereto as Ex. 5.

- "State Street represented to both Memorial Hermann and **Cambridge in its capacity as Memorial Hermann's agent** that State Street would make low-risk investments that would preserve Memorial Hermann's capital."  Compl. ¶ 10 (emphasis added); *see also* FAC ¶ 10; SAC ¶ 11.

- "In order to induce Memorial Hermann to contract with it, State Street made material misstatements and misrepresentations to Memorial Hermann and to **Cambridge in its capacity as Memorial Hermann's agent**."  Compl. ¶ 27 (emphasis added); *see also* FAC ¶ 28; SAC ¶ 29.

- "State Street made material misstatements and misrepresentations to Memorial Hermann and to **Cambridge in its capacity as Memorial Hermann's agent**, and therefore supplied false information as guidance for Memorial Hermann's investment strategy." Compl. ¶ 33 (emphasis added); *see also* FAC ¶ 34; SAC ¶ 35.

- "Cambridge, pursuant to oral representations to Memorial Hermann and pursuant to the **agency relationship formed by the Financial Advisory Services Proposal**, owed a fiduciary duty to Memorial Hermann."  Compl. ¶ 49 (emphasis added); *see also* FAC ¶ 50; SAC ¶ 51.

The same holds true for Memorial Hermann's proposed Third and Fourth Amended Complaints, the latter of which was submitted to the Court on March 18, 2010, months after the close of fact discovery.  In its proposed Fourth Amended Complaint, which the Court recently granted leave to file, Memorial Hermann alleges *five times* that Cambridge Financial was its agent, as follows:

### Statements from Memorial Hermann's Proposed Fourth Amended Complaint[6]

- "Moreover, State Street's oral comments, Fact Sheet, written presentations, 'Agreement of Trust,' and 'Fund Declaration' told Memorial Hermann and **Cambridge (in Cambridge's capacity as Memorial Hermann's agent)** that LDBF's investment objective was to maximize income while preserving capital . . . ."  PFAC ¶ 24 (emphasis added).[7]

---

[5] "SAC" refers to Memorial Hermann's Second Amended Complaint, filed March 14, 2008 (Doc. No. 39 in No. 07-cv-4089 (S.D. Tex.)), attached hereto as Ex. 6.

[6] *See also* Pls.' Proposed Third Amended Complaint, Ex. 1 to Pls.' Mot. for Leave to File Third Am. Compl., filed Jan. 7, 2010, at ¶¶ 8, 18, 25 (Doc. No. 101 in No. 08-cv-5440).

[7] "PFAC" refers to Memorial Hermann's "proposed Fourth Amended Complaint," Ex. 1 to Pls.' Pls.' Opp. to Def.'s Mot. for Leave to File Sur-Reply, filed Mar. 18, 2010 (Doc. No. 55 in No. 08-cv-5440).

4

- "Without limitation, State Street made at least the following material misrepresentations to Memorial Hermann and HePIC **(and to their agent, Cambridge Financial Services, Inc.)** . . . ." PFAC ¶ 41 (emphasis added).

- "State Street made these material misrepresentations to Memorial Hermann and HePIC **(and to their agent, Cambridge Financial Services, Inc.)** with the intent to induce Plaintiffs to enter the Trust Agreements, invest substantial sums of money in LDBF, and maintain that money in LDBF." PFAC ¶ 42 (emphasis added).

- "In the course of its business dealings with Memorial Hermann and HePIC, State Street made many misrepresentations about the Fund to Memorial Hermann, HePIC, and **Cambridge in its capacity as Plaintiffs' agent**." PFAC ¶ 49 (emphasis added).

- "Without limitation, State Street made at least the following misrepresentations to Memorial Hermann and HePIC **(and to their agent, Cambridge Financial Services, Inc.)** . . . ." PFAC ¶ 49 (emphasis added).

Just today, Memorial Hermann filed an amended complaint, Doc. No. 108, after being granted permission by the Court to do so on September 17, 2010.  However, Memorial Hermann has conspicuously deleted the various references to Cambridge Financial as its agent that were littered throughout the version of the amended complaint that this Court approved, as well as made other changes that were not included in its previous submission.  Two points are of note on this new version of the amended complaint.  First, Memorial Herman's filing of an amended complaint today that differs from the version approved by the Court is improper, and State Street will move to strike it on that basis.[8]  Second, even if improperly changing the amended complaint filed today from the version approved by the Court were permissible, Memorial Hermann's repeated admissions in its prior pleadings would still be admissible evidence either as evidentiary admissions or as prior inconsistent statements.  *See Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989).  Accordingly, Memorial Hermann's inappropriate filing is of no moment on the issue of agency.

---

[8] *See In re Refco Capital Markets, Ltd. Brokerage Customer Sec. Litig.*, No. 06 Civ. 643(GEL), 2008 WL 4962985, at *3 (S.D.N.Y. 2008) (stating that "'a complete copy of the proposed amended complaint must accompany the motion so that both the Court and the opposing parties can understand the *exact* changes sought'" (quoting *Smith v. Planas*, 151 F.R.D. 547, 550 (S.D.N.Y. 1993)) (emphasis added)).

25492192_3

This is particularly so because apart from its complaints, Memorial Hermann has made similar allegations in other submissions, both to this Court and to the transferring court. *See* Pls.' Mot. to Remand at 1, filed Dec. 21, 2007 (Doc. No. 14 in No. 07-cv-4089 (S.D. Tex.))[9] ("In January of 2003, defendant Cambridge Financial Services, Inc. contracted to act as Memorial Hermann's agent and to provide certain financial advisory services to Memorial Hermann."); Pls.' Opp. to Mot. to Transfer Venue at 13, filed Feb. 11, 2008 (Doc. No. 31 in No. 07-cv-4089 (S.D. Tex.))[10] (same); Pls.' Opp. to State Street's Mot. for Leave to File Sur-Reply at 11, filed Mar. 18, 2010 (Doc. No. 55 in No. 08-cv-5440 (S.D.N.Y.)).

Memorial Hermann does not base its request to rescind its admission on newly discovered facts or information.  Indeed, it could not do so, since the information about Memorial Hermann's relationship with Cambridge Financial has always been uniquely in its possession.[11]  So, Memorial Hermann is forced to base its request on the notion that its admission was inadvertent.  However, as described above, this basis is totally belied by the fact that Memorial Hermann made the admission, not once, but repeatedly.  The bottom line then, is that Memorial Hermann has no basis to rescind its admission.  Memorial Hermann's assertions were both intentional and advertent, not, as it now contends, the other way around.

## A.    Memorial Hermann's Agency Admissions Are Binding

Memorial Hermann asserts that its admission that Cambridge Financial was its agent constitutes a non-binding legal conclusion.  But the assertion of an agency relationship is admissible as a statement of fact when made by one of the purported parties to the relationship.

---

[9] This document is attached hereto as Ex. 7.

[10] This document is attached hereto as Ex. 8.

[11] *See Oropeza v. AppleIllinois, LLC*, No. 06 Civ. 7097, 2010 WL 55655, at *3 (N.D. Ill. Jan. 5, 2010) (denying defendant's motion to amend its answer since amendment was "not based on factual information not previously available, as is the usual basis for a motion to amend").

*See* 3 C.J.S. *Agency* § 550 (2010).  Indeed, assertions made by a party "'in any pleading are judicial admissions that bind the [party] throughout [the] litigation.'"  *N.L.R.B. v. Consol. Bus Transit, Inc.*, 577 F.3d 467, 474 (2d Cir. 2009) (second modification in original) (quoting *Gibbs ex rel Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006).  Accordingly, Memorial Hermann's admissions in its pleadings that Cambridge Financial was its agent are binding judicial admissions.  *See Arlin-Golf, LLC v. Vill. of Arlington Heights*, No. 09 Civ. 1907, 2010 WL 918071, at *6 (N.D. Ill. Mar. 9, 2010) ("By repeatedly and unequivocally pleading this alleged agency relationship, Plaintiffs bound themselves to their judicial admissions . . . ."); *Park Place Corp. v. Indus. P.F., Inc.*, No. 6:06 Civ. 02205(HMH), 2007 WL 1462188, at *5 (D.S.C. May 16, 2007) (recognizing that plaintiff's assertion in its complaint that defendant was an agent was "conclusive of the fact admitted"); *Landry v. United States*, 815 F. Supp. 1000, 1004 (E.D. Tex. 1993) (holding that plaintiff's assertion of an agency relationship in its complaint was a judicial admission that conclusively established the existence of that agency relationship), *aff'd*, No. 93-4351, 1994 WL 122186, at *5 (5th Cir. 1994).

## II.   THE UNDISPUTED FACTS ESTABLISH THAT CAMBRIDGE FINANCIAL WAS MEMORIAL HERMANN'S AGENT AS A MATTER OF LAW

Even if Memorial Hermann were permitted to withdraw its multiple admissions on the topic of agency, the uncontroverted record establishes that Cambridge Financial <u>was</u> in fact Memorial Hermann's agent for monitoring the performance of Memorial Hermann's investments, making investment recommendations, and receiving and transmitting information from State Street.  Under Texas law,[12] "[a]n agent is one who consents to act on behalf of, and

---

[12] Because the contract between Memorial Hermann and Cambridge Financial is governed by Texas law, State Street submits that Texas law applies to this question.  However, the law of Texas and the law of Connecticut, Cambridge Financial's principal place of business, are not materially different on this issue.  *See Beckenstein v. Potter & Carrier, Inc.*, 464 A.2d 6, 13-14 (Conn. 1983).

subject to, the control of the principal, who has manifested consent that the agent shall so act." *Robles v. Consol. Graphics, Inc.*, 965 S.W.2d 552, 557 (Tex. Ct. App. 1997) (citation omitted); *Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 896 (Tex. Ct. App. 2003) ("An agent is one who is authorized by another to transact business or to manage some affair." (citation and internal quotation marks omitted)).  "[T]he scope of an agency relationship is determined by the circumstances conferring the agency and need not specifically include the authority to bind the principal."  *Robles*, 965 S.W.2d at 558 (citing *Williams v. Jennings*, 755 S.W.2d 874, 883 (Tex. Ct. App. 1988)).  Financial advisors commonly act as agents and fiduciaries for their clients.  *See, e.g.*, *Hand v. Dean Witter Reynolds Inc.*, 889 S.W.2d 483, 494 (Tex. Ct. App. 1994) (contrasting limited agency of nondiscretionary broker to "on-going agency relationship as there would be with a financial advisor").  As Memorial Hermann acknowledges, where the historical facts are established, the existence of an agency relationship is one of law for the court.  *See Robles*, 965 S.W.2d at 557.  Here, the established historical facts show that Cambridge Financial was Memorial Hermann's agent as a matter of law.

### A.   The Unrefuted Evidence Shows That Cambridge Financial Was In Fact Memorial Hermann's Agent

At bottom, the question of whether Memorial Hermann is permitted to withdraw its ubiquitous admission that Cambridge Financial was its agent is actually of limited significance. That is because, for purposes of summary judgment, the evidence of record shows that there is no genuine issue of material fact that Cambridge Financial was in fact Memorial Hermann's agent for purposes of receiving and transmitting investment information, monitoring Memorial Hermann's investments, and making investment recommendations – in other words, performing

all the functions that one would typically expect from an investment advisor like Cambridge Financial.[13]

Indeed, Memorial Hermann's own witnesses confirm that Cambridge Financial acted as Memorial Hermann's agent for the purpose of, *inter alia,* monitoring investment performance and communicating with and receiving information from State Street.  For example, Memorial Hermann's Chief Financial Officer, Carrol Aulbaugh, specifically agreed that Cambridge Financial's role was "to act as Memorial Hermann's agent," Ex. 9 at 47:13-48:6, and acknowledged that Mr. Liebre was "an agent for receiving information" on behalf of Memorial Hermann.[14]  *Id.* at 599:23-600:12.  Mr. Aulbaugh asserted that Memorial Hermann "delegated" to Cambridge Financial the responsibility of "talk[ing] to the investment managers, . . . meet[ing] with them quarterly, find[ing] out the information that [Cambridge Financial] would use in coming up with the monitoring of their investment performance, rather than a Memorial Hermann employee doing that."  *Id.* at 47:15-48:6.  Explaining further, Mr. Aulbaugh testified that, in monitoring Memorial Hermann's investments, Cambridge Financial was to "interface with the outside money managers" and to ask "[p]robing questions" of State Street about assets in LDBF, and to do all of this "proactively, regularly throughout the course of [the] investment." *Id.*; *id.* at 524:1-526:1.  As to the flow of information, Mr. Aulbaugh said that Cambridge Financial was to receive information from State Street and report back to Memorial Hermann. *Id.* at 526:1-10; *id.* at 735:9-18 (testifying that Memorial Hermann "relied upon [Cambridge

---

[13] In light of Memorial Hermann's admission on the issue of agency, State Street added some, but not all, of the compelling factual record on agency in its summary judgment briefing, material that State Street would respectfully ask permission to supplement in the event that Memorial Hermann's admission is withdrawn.

[14] *See* 3 C.J.S. *Agency* § 550 (2010) (stating that the "assertion . . . of the existence of an agency relationship" is admissible as "a statement of fact when made by one of the purported parties" to the relationship).

Financial's] performance monitoring" and the "information that [Liebre] would pick up in talking to the various investment managers").  In short, State Street was justified in its belief that providing information to Mr. Liebre was the proper method for communicating information to Memorial Hermann.

Mr. Aulbaugh's testimony is corroborated by that of Stephen Pouns, a former hedge fund manager who, given his investment background, was a prominent member of Memorial Herman's Investment Subcommittee.  R. 56.1 Stmt. ¶ 7.  In his deposition, Mr. Pouns agreed that State Street was to "deal through Cambridge Financial [and was to] provide information concerning the Limited Duration Bond Fund directly to Cambridge Financial, not to the investment subcommittee directly."  Ex. 10 at 108:2-19.  Mr. Pouns explained that the way the relationship worked, Cambridge Financial was to "ask[] for lots of information from State Street," and State Street should "provide what information was asked for."  *Id*. at 107:15-25.  Cambridge Financial was then "to distill that information and give it to the investment subcommittee."  *Id.* at 108:2-19.

The parties' course of conduct also shows that Cambridge Financial's relationship with Memorial Hermann was that of agent/principal.  *See Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 847 (Tex. Ct. App. 1984) ("[T]he existence of an agency relationship . . . may be implied from the conduct of the parties . . . ."); *see also* 3 C.J.S. *Agency* § 573 (2010).  Here, the dealings among Memorial Hermann, Cambridge Financial, and State Street make it clear that part of Cambridge Financial's role on behalf of Memorial Hermann was to receive and transmit information from State Street, and in many cases at the specific direction of Memorial Hermann as principal.  *See, e.g.*, Exs. 11-17.

Moreover, the record is replete with evidence of Memorial Hermann's continuing control over Cambridge Financial – which, contrary to Memorial Hermann's suggestion otherwise, is another indicia of an agency relationship.  *See Burnside*, 113 S.W.3d at 896 (finding agency where "Burnside requested Smith to act on his behalf in contacting an employment agency to help Burnside hire an operations manager.  Smith was to conduct the initial interviews with any candidates the employment agency referred, but Burnside retained control by reserving for himself the final hiring decision"), *cited in* 3 Texas Jurisprudence 3d *Agency* § 3 (3d ed. 2010).  Here, Memorial Hermann reserved to itself the ultimate control over investment decisions.  *See, e.g.*, Ex. 18 at 307:13-18 (Mr. Aulbaugh instructing Mr. Liebre that he wanted to remain invested in LDBF).  Moreover, the evidence also shows that Memorial Hermann often controlled how Cambridge Financial carried out its duties to monitor investments and provide investment advice by directing Mr. Liebre to gather specific information from State Street, and present it in specific ways to Memorial Hermann.  *See, e.g.*, Exs.11, 12, 15, 19, and 20.  Such exercise of control is further unrefuted evidence that Cambridge Financial's relationship with Memorial Hermann was that of agent/principal.

### B.   Memorial Hermann Offers No Evidence In Support of Its Argument That Its Admission That Cambridge Financial Was Its Agent Was Unfounded

Memorial Hermann has offered no evidence to contradict the testimony of its own witnesses, the documentary evidence, or the admission in its court papers that Cambridge Financial was its agent.  Instead, Memorial Hermann points to the contract between Memorial Hermann and Cambridge Financial as purportedly conclusive evidence of the non-existence of an agency relationship.  This argument is flawed for a host of reasons.

First, pursuant to the agreement, Memorial Hermann expressly contracted for Cambridge Financial to monitor its investments.  In and of itself, the delegation of a principal's duty to

11

monitor creates an agency relationship.  *See* Restatement (Third) of Agency § 5.03 cmt. b, illus. 5 (2006) (imputing knowledge of agent with duty to monitor to principal).  Next, Memorial Hermann asserts that "[n]othing in the contract authorized Cambridge Financial to take any action on Memorial Hermann's behalf."  MH Mem. at 4 (internal quotation marks omitted).  But there is ample authority stating that the scope of an agent's authority need not include the authority to bind the principal; rather, one may be an agent for the more limited purpose of transmitting and receiving information.  *See Robles*, 965 S.W.2d at 558; *see also* Restatement (Third) of Agency § 1.01 cmt. c (2006) ("Agents who lack authority to bind their principals to contracts nevertheless often have authority to negotiate or to transmit or receive information on their behalf."); Restatement (Third) of Agency § 1.01 cmt. c (2006) ("[A] principal might employ an agent who acquires information from third parties on the principal's behalf but does not 'deal' in the sense of entering into transactions on the principal's account.").[15]  Thus, Memorial Hermann's argument that "[n]othing in the contract authorized Cambridge Financial to take any action on Memorial Hermann's behalf" may be correct, but it misses the point.[16]  *See* MH Mem. at 4.

---

[15] *See also Rash v. J.V. Intermediate, Ltd.*, 498 F.3d 1201, 1208 n.2 (10th Cir. 2007) (applying Texas law and quoting Restatement that "[a]gents who lack authority to bind their principals to contracts nevertheless often have authority to negotiate or to transmit or receive information on their behalf"); *Santa Fe Tech., Inc. v. Argus Networks, Inc.*, 42 P.3d 1221, 1232 (N.M. Ct. App. 2001) ("No one disputes that Malewicz did not have authority to bind Argus contractually. However, this lack of authority does not preclude Malewicz from being an agent for Jannetta or Burns.  Some agents have authority only to transmit or receive information on behalf of the principal." (citing *Diversified Dev. & Inv., Inc. v. Heil*, 889 P.2d 1212, 1219-20 (N.M. 1995)).

[16] The absence of explicit "agency" language in the contract is not in any way dispositive.  *See, e.g.*, *Burnside*, 113 S.W.3d at 896 ("[A]n agency relationship does not depend upon express appointment or assent by the principal; rather, it may be implied from the conduct of the parties under the circumstances." (citing *Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex. 1992)); *Daily Int'l Sales Corp. v. Eastman Whipstock, Inc.*, 662 S.W.2d 60, 63 (Tex. Ct. App. 1983) ("[A]lthough one of the written agreements between the parties is labeled an 'agency' agreement, such a designation is not controlling, and the legal effect of the relation must be determined from

Accordingly – even apart from Memorial Hermann's numerous admissions – the testimony of its own witnesses, the established course of conduct among Memorial Hermann, Cambridge Financial and State Street, and the retention of control by Memorial Hermann over Cambridge Financial, make it abundantly clear that Cambridge Financial was Memorial Hermann's agent for, at a minimum, the receipt and transition of information, as a matter of law.

### C.   Memorial Hermann Should Not Be Permitted to Withdraw Its Affirmative Admissions that Cambridge Financial Was Its Agent

Memorial Hermann relies on Fed. R. Civ. P. 36 for support that its agency admission should be permitted to be withdrawn.  But Rule 36 applies specifically to Requests for Admissions made during discovery.  Nothing in the Rule suggests that it applies in any other situation, particularly to a non-discovery related admission made in numerous pleadings and other court filings.  In contrast to situations under Rule 36 that often merit withdrawal of an admission, such as when a party has mistakenly admitted a fact, has failed to respond to a Request for Admission, or has learned new information during discovery that renders a previous admission incorrect, Memorial Hermann has stated in five iterations of its complaint and several other filings that Cambridge Financial was its agent, and has learned nothing new since the close of discovery that warrants correction of a previous admission.

In any event, State Street has relied on Memorial Hermann's admission of its agency relationship with Cambridge Financial in its Motion for Summary Judgment, arguing that the information State Street provided to Mr. Liebre meant that Memorial Hermann was under a duty to mitigate.[17]  Simply put, as a matter of equity, Memorial Hermann should not be permitted to

---

the provisions of the contract and the facts of the relationship."); 3 Texas Jurisprudence 3d *Agency* § 1 (3d ed. 2010) (same).

[17] Memorial Hermann inaccurately asserts that State Street argued for the first time on reply that Cambridge Financial was Memorial Hermann's agent, MH Mem. at 2, and that State Street's

withdraw an agency admission it has consistently asserted on numerous occasions for the past three years. *See In re Fisherman's Wharf Fillet, Inc.*, 83 F. Supp. 2d 651, 661 (E.D. Va. 1999) ("With the passage of time and as each moment for response to a pleading slipped by, the Claimant's burden for withdrawal of the deemed admissions is raised and the prejudice to the [non-moving party] is increased.").  Indeed, discovery ended nearly one year ago, expert discovery has long concluded, and all dispositive motions have been briefed.  Under these circumstances, Memorial Hermann's motion to withdraw its admission is completely inappropriate. *See Spikes v. Bolivar County*, No. 2:07 Civ. 22(MPM)(SAA), 2008 WL 2797014, at *3 (N.D. Miss. July 8, 2008) (finding prejudice where plaintiffs relied on the admissions in conducting discovery); *see also Zimmerman v. Cambridge Credit Counseling Corp.*, 529 F. Supp. 2d 254, 269 (D. Mass. 2008) (same), *aff'd sub nom. Zimmerman v. Puccio*, 613 F.3d 60 (1st Cir. 2010); *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 123 F.R.D. 97, 107 (D. Del. 1988) (finding prejudice where the non-moving party had foregone demanding certain answers at depositions based on admissions).

Memorial Hermann also tries to downplay the importance of its agency relationship with Cambridge Financial,[18] calling it immaterial to State Street's summary judgment motion –

---

summary judgment motion "include[d] only two fleeting references to Liebre being Memorial Hermann's 'agent.'"  *Id*. at 5.  This is simply not so.  State Street's opening brief refers to Cambridge Financial's agency, and does so in several places. *See Def. Mem. at 2 (". . . State Street had informed Memorial Hermann through its outside investment advisor of LDBF's substantial subprime exposure . . ."; *id*. at 3 n.4 ("Mr. Liebre, who Memorial Hermann admits was its agent . . . ."); *id*. at 5 ("State Street informed Memorial Hermann through its advisor, Mr. Liebre, of LDBF's precarious and deteriorating situation."); *id*. at 13 (". . . Memorial Hermann's agent, Mr. Liebre, was informed by State Street . . . ."); *id*. at 19 (". . . State Street informed Memorial Hermann through its advisor of LDBF's critical situation.").

[18] Despite its attempt now to minimize the significance of the agency relationship, Memorial Hermann relied upon the agency relationship to allege in its complaint against Cambridge Financial and Mr. Liebre that their agency helped to create a fiduciary relationship: "Cambridge and Liebre, pursuant to oral representations to Memorial Hermann and HePIC and pursuant to

raising the question of why Memorial Hermann has bothered with this Motion.  MH Mem. at 6.

Memorial Hermann is too coy, however, and its reason for this Motion is not without motive:  in

making its mitigation and causation arguments, State Street expressly relied upon the undisputed

fact that Mr. Liebre was Memorial Hermann's agent, based upon Memorial Hermann's

affirmative assertions in three operative pleadings, two proposed pleadings, three additional

filings in this case, the testimony of Memorial Hermann's witnesses, and documents evidencing

the agency relationship.  It is clear on the face of State Street's brief that one of its primary

arguments is that on July 27, 2007, Memorial Hermann's duty to mitigate was triggered when

Memorial Hermann was informed through its agent, Mr. Liebre, of LDBF's dire situation.  Thus,

while the fact that Cambridge Financial was Memorial Hermann's agent is not a dispositive issue

in State Street's summary judgment motion, it is a highly material fact that plainly has bearing

on State Street's motion.

## **<u>CONCLUSION</u>**

For the reasons set forth herein, State Street respectfully requests that the Court deny

Memorial Hermann's Motion to Amend Response to Rule 56.1 Statement of Facts.

---

the agency relationship . . . owed a fiduciary duty to Memorial Hermann and HePIC."  SAC at ¶ 51.  Now that Memorial Hermann has extracted a settlement with Cambridge Financial and Mr. Liebre, and the agency relationship no longer benefits it, Memorial Hermann is trying to walk away from its earlier allegations.  However, equity should not permit Memorial Hermann to use the agency relationship when it perceives advantage in doing so, and then abandons it when no longer useful.  *See United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) ("A party . . . cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version . . . safe in the belief that the trier of fact will never learn of the change in stories.").

15

Dated:  October 1, 2010                    ROPES & GRAY LLP


                                           By: /s/ Harvey J. Wolkoff
                                           Harvey J. Wolkoff
                                           Robert A. Skinner
                                           Daniel J. Maher
                                           One International Place
                                           Boston, MA  02110
                                           Tel: (617) 951-7000
                                           Fax: (617) 951-7050
                                           harvey.wolkoff@ropesgray.com
                                           robert.skinner@ropesgray.com
                                           daniel.maher@ropesgray.com
                                           *Attorneys for Defendant State Street Bank and Trust Company*

25492192_3

<u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on October 1, 2010, I caused a true and correct copy of the foregoing document to be served upon the all counsel of record via the ECF system.


                               <u>/s/ Allison M. Boscarine</u>
                               Allison M. Boscarine