UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE STATE STREET BANK AND TRUST CO. FIXED INCOME FUNDS INVESTMENT LITIGATION | Civil Action No. 08-md-1945 |
| NING YU, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>STATE STREET CORPORATION, et al.,<br><br>Defendants. | Civil Action No. 08-cv-08235-RJH<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
STATE STREET'S MOTION TO DISMISS
SECOND AMENDED CLASS ACTION SECURITIES COMPLAINT**

# TABLE OF CONTENTS

                                                                              **Page**

ARGUMENT ....................................................................................................................1

1.    The SAC Fails to Allege Materiality..................................................................1

2.    YPF's Investment Objective Was a General Statement of Aspirational Goals ..................4

3.    The Phrase "High Quality" in the Fund's Investment Objective Was Not False or Materially Misleading ...............5

4.    YPF's Investment Objective of Seeking "Liquidity" Was Not False or Materially Misleading..............7

5.    The Phrase "Diversified Portfolio" in YPF's Investment Objective Was Not False or Materially Misleading.................8

6.    Plaintiff's Alleged Losses Are Not Causally Connected to the Alleged Misstatements or Omissions.............................10

CONCLUSION.................................................................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Aaron v. SEC*,
   446 U.S. 680 (1980)..................................................................................................................10

*Amida Capital Mgmt. II, LLC v. Cerberus Capital Mgmt., L.P.*,
   669 F. Supp. 2d 430 (S.D.N.Y. 2009)........................................................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................................10

*Freidus v. ING Groep N.V.*,
   No. 09 Civ. 1049 (LAK), 2010 WL 3554097 (S.D.N.Y. Sept. 14, 2010) ..................................7

*In the Matter of Piper Capital Mgmt., Inc.*,
   S.E.C. Release No. 175, 2000 WL 1759455 (Nov. 30, 2000) ...............................................3, 5

*In re Alliance N. Am. Gov't Income Trust, Inc. Sec. Litig.*,
   No. 95 Civ. 0330 (LMM), 1996 U.S. Dist. LEXIS 14209 (S.D.N.Y. Sept. 26, 1996)..............4

*In re Alliance Pharm. Corp. Sec. Litig.*,
   279 F. Supp. 2d 171 (S.D.N.Y. 2003).....................................................................................7, 8

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
   705 F. Supp. 2d 86 (D. Mass. 2010) ..........................................................................................5

*In re Initial Pub. Offering Sec. Litig.*,
   358 F. Supp. 2d 189, 205 (S.D.N.Y. 2004)................................................................................3

*In re TCW/DW N. Am. Gov't Income Trust Sec. Litig.*,
   941 F. Supp. 326 (S.D.N.Y. 1996)........................................................................................4, 5

*Landmen Partners Inc. v. Blackstone Group, L.P.*,
   659 F. Supp. 2d 532 (S.D.N.Y. 2009).....................................................................................7, 8

*Langley v. Prudential Mortg. Capital*,
   546 F.3d 365 (6th Cir. 2008) .....................................................................................................3

*N.J. Carpenters Vacation Fund v. Royal Bank of Scotland*,
   No. 08 CV 5093 (HB), 2010 WL 1172694, at *14 (S.D.N.Y. Mar. 26, 2010).........................7

*Owens v. Gaffken & Barringer Fund, LLC*,
   No. 08 Civ. 8414 (PKC), 2009 WL 3073338, at *8 (S.D.N.Y. Sept. 21, 2009).......................10

*Tabankin v. Kemper Short-Term Global Income Fund*,
 No. 93 C 5231, 1994 U.S. Dist. LEXIS 965 (N.D. Ill. Feb. 1, 1994) ......................................... 5

*Yu v. State Street Corp.*,
 686 F. Supp. 2d 369 (S.D.N.Y. 2010) ............................................................................. passim

**OTHER AUTHORITIES**

70 Fed. Reg. 1508 (Jan. 7, 2005) ...................................................................................................... 2

Defendants State Street Corporation, SSgA Funds, and individual defendants Peter G. Leahy, James Ross and Mark E. Swanson (collectively, "State Street") respectfully submit this reply memorandum in further support of their motion to dismiss Plaintiff's Second Amended Class Action Complaint ("SAC").

## ARGUMENT

**1.    The SAC Fails to Allege Materiality**

The Yield Plus Fund's ("YPF" or "the Fund") periodic shareholder reports said that Mortgage-Backed Securities ("MBS")[1] represented 13% of the Fund, while Asset-Backed Securities ("ABS") represented about 69%. *See, e.g.*, SAC ¶ 77. Plaintiff asserts that the Fund's ABS positions were actually collateralized almost entirely by mortgages, rather than an array of consumer debt, such as auto loans, credit cards, and personal property. *See* SAC ¶ 125. He contends that the Fund's Registration Statement was misleading because instead of listing more than 70% of the Fund as invested in MBS, SAC ¶ 71, it showed only about 13% invested in MBS and 60% or more in ABS.

The Court recognized that "questions of proof" exist about the materiality of Plaintiff's alleged misrepresentation, but because "[t]he standard for pleading materiality is low," left it to summary judgment to resolve that issue. July Op. at 6. Plaintiff's Opposition to State Street's Motion to Dismiss, naturally enough, seeks cover in the Court's statement. Opp. at 1. The tip-off to the SAC's fatal infirmity, however, is his exclusive claim to refuge in the Court's observation. He otherwise does not point to a single one of his own well-pleaded allegations of materiality necessary to satisfy the *Iqbal* standard. That is because there are none. And that is

---

[1] The terms "Mortgage-Backed Securities," "Asset-Backed Securities," and "mortgage-related securities" are defined in State Street's opening brief. *See* Defs.' Mem. at 5 n. 3.

- 1 -

fundamental on this motion.  State Street respectfully submits that the Court overlooked the fact that the SAC's amendments did not contain a single factual allegation about materiality; that is, the SAC did nothing to rectify the deficiencies in pleading materiality previously identified by the Court.  *See Yu v. State Street Corp.*, 686 F. Supp. 2d 369, 378 (S.D.N.Y. 2010).  While the standard for pleading materiality may indeed be low, Plaintiff has failed to meet it.

This is no accident or oversight on Plaintiff's part.  Rather, as the Court observed, the logic of Plaintiff's allegation is that a reasonable investor would have viewed a portfolio consisting of over 60% non-mortgage-related ABS – *i.e.*, bonds backed by mostly unsecured debt such as credit cards and student loans – as more conservative than one collateralized by mortgages.  But that proposition is neither apparent nor supportable.  And the plain language of the Registration Statement suggested the *opposite*:  ABS presented *more* risk than MBS.[2]  So by overstating ABS as opposed to MBS, a reasonable investor would have believed that the Fund was *riskier* than one concentrated in MBS, not the other way around.

In order to adequately plead the "materiality" of the claimed omission, then, Plaintiff would have to come up with particularized allegations that ABS collateralized by mortgages was *riskier* than ABS collateralized by the "promises" underlying credit cards, student loans and the

---

[2] The Registration Statement stated that "Asset-backed securities present certain additional risks that are not presented by mortgage-backed securities because asset-backed securities generally do not have the benefit of a security interest in collateral that is comparable to mortgage assets."  Skinner Decl. dated Aug. 27, 2010, Ex. A ("Prospectus") at 43.  In that respect, the Fund's Registration Statement aligned with the definitions used by the SEC, describing Mortgage-Backed Securities as bonds issued by "U.S. government-sponsored enterprises" and Asset-Backed Securities as securities collateralized by "residential mortgages, automobile receivables, credit card receivables and student loans."  *See* Ex. 1 to the Reply Mem. of Law in Further Support of State Street's Mot. to Dismiss Second Amended Class Action Securities Compl.; 70 Fed. Reg. 1508 (Jan. 7, 2005), Ex. 1 to State Street's Mem. of Law in Support of Mot. to Dismiss Second Amended Class Action Securities Compl. ("Defs.' Mem.").  Furthermore, there is no dispute that the Fund disclosed the presence of mortgage-related securities in the ABS category.  *Yu*, 686 F. Supp. 2d at 378-79; *accord* July Op. at 4-5.

like.  But that he has not and cannot do.  Instead of saying anything at all about materiality prior to the meltdown, Plaintiff depends entirely on the dramatic decline in the value of mortgage-related securities beginning in the summer of 2007.  But that is impermissible pleading by hindsight.  *See Yu*, 686 F. Supp. 2d at 377; s*ee also In re Initial Pub. Offering Sec. Litig.*, 358 F. Supp. 2d 189, 205 (S.D.N.Y. 2004).[3]  In short, whether State Street's motion is tantamount to one seeking dismissal or reconsideration, the fundamental point is that the SAC does not plead materiality.  Plaintiff's misrepresentation claim regarding the extent of the Fund's exposure to mortgage-related securities should therefore be dismissed.

Plaintiff's misrepresentation claim fails for another independent reason as well.  He asserts that State Street should have disclosed that up to 87% of YPF was invested in MBS, and the omission made the Registration Statement misleading – that is, that it "*mis*led" investors in the *wrong* direction about the portfolio's risk.  *See* SAC ¶¶ 74-75.  The very case that Plaintiff attaches to his brief, however, an ALJ decision in a case brought by the SEC captioned *In the Matter of Piper Capital Management, Inc.*, S.E.C. Release No. 175, 2000 WL 1759455 (Nov. 30, 2000), recognizes that "mortgage-backed securities" are generally "securities represent[ing] undivided pass-through interests in mortgage pools assembled and guaranteed as to payment of principal and interest by various federal agencies," which the opinion goes on to identify as "the Government National Mortgage Association and the Federal Home Loan Mortgage Corporation."  *Id*. at *10.  If State Street had characterized the Fund's investments as 87% MBS,

---

[3] In fact, a number of courts have taken judicial notice of the fact that the credit crisis did not begin until the summer of 2007, and that fact does not appear to be in dispute.  *See, e.g., Langley v. Prudential Mortg. Capital*, 546 F.3d 365, 367 (6th Cir. 2008) (recognizing that the subprime mortgage crisis began in the summer of 2007), *reh'g denied,* 554 F.3d 647 (6th Cir. 2009); *Amida Capital Mgmt. II, LLC v. Cerberus Capital Mgmt., L.P.*, 669 F. Supp. 2d 430, 433 (S.D.N.Y. 2009) ("July 2007 marked the beginning of what was then called the 'credit crunch,' the first phase of the financial crisis that culminated in the fall of 2008.").

Plaintiff would be here arguing that the Registration Statement was false and misleading because the MBS in the Fund did not predominantly consist of MBS that was agency-backed. At most, the Registration Statement led investors to believe that the ABS at issue were, for example, credit card debt and student loans (and this does not even take into account the quarterly reports' schedules of investments). But to make out that case, Plaintiff would have to allege materiality, which he pointedly has not done.

The ultimate flaw in the SAC is Plaintiff's inability to muster a good faith allegation that the Fund's ABS exposure posed more risk to investors because the ABS it owned were secured by mortgages rather than by the promises of credit customers, student-borrowers and the like. But that sort of good faith allegation is neither advanced in the SAC nor plausible. So while the Court indicated that this issue could be resolved on summary judgment, July Op. at 6, State Street respectfully submits that there is no reason to wait. The SAC so fails to meet the *Iqbal* standard for pleading materiality that the Court should reconsider and dismiss Plaintiff's misrepresentation claim now.

**2.      YPF's Investment Objective Was a General Statement of Aspirational Goals**

Plaintiff claims that the Fund's non-fundamental investment objective – which he rebrands the "investment guidelines" – was materially false and misleading. Opp. at 8-10. But as another judge in this district held in an analogous case, "[t]he investment objective announces the goal of the Fund, rather than a promise to investors . . . [and] is not the type of statement that a reasonable investor would consider important in deciding whether or not to invest." *In re Alliance N. Am. Gov't Income Trust, Inc. Sec. Litig.*, No. 95 Civ. 0330 (LMM), 1996 U.S. Dist. LEXIS 14209 (S.D.N.Y. Sept. 26, 1996) (citing *In re TCW/DW N. Am. Gov't Income Trust Sec. Litig.*, 941 F. Supp. 326, 343 (S.D.N.Y. 1996)). This is especially true here, where the Registration Statement separately disclosed in detail, right after setting out the investment

objective, what the Fund would *do* to try to achieve its investment objective.[4]  Plaintiff's citation to two out-of-circuit cases do nothing to undercut this settled law.  Both of those cases alleged violations of quantifiable investment policies;[5] here, Plaintiff complains about an inherently subjective assertion to claim that the Fund's investments were inconsistent with its stated goals.  YPF's investment objective did not, as Plaintiff argues, provide "ground rules for the Fund's overall investment strategy." Opp. at 9.  It was only a non-actionable statement of the Fund's aspirations.

3.  **The Phrase "High Quality" in the Fund's Investment Objective Was Not False or Materially Misleading**

The Court previously rejected Plaintiff's claim that the Registration Statement falsely represented that the YPF would invest primarily in "high quality debt securities," holding, *inter alia*, that the Registration Statement "employed the term 'high quality' to describe the relative credit grade of the Fund's holdings, which the [Registration Statement] language made clear would include mortgage-related securities."  *Yu*, 686 F. Supp. 2d at 375-76.  The Court ruled that

---

[4] The investment objective is immediately followed in the Registration Statement by a more detailed disclosure of the Fund's principal investment strategies.  *See, e.g.*, Prospectus at 4 (listing classes of permissible investments, and stating that "[t]he Fund will actively trade to benefit from short-term yield disparities among different issues of fixed-income securities, or otherwise to increase income."); *see also id.* at 15, 19, 43.  These investment strategies "give meaning to the general . . . statement" by establishing detailed criteria for the Fund's investments.  *See Tabankin v. Kemper Short-Term Global Income Fund*, No. 93 C 5231, 1994 U.S. Dist. LEXIS 965, at *12 (N.D. Ill. Feb. 1, 1994).

[5] First, in *In re Piper Capital Mgmt., Inc.*, 2000 WL 1759455, at *8, the SEC Enforcement Division alleged that the fund "had inflated overall Fund portfolio duration to more than three times the figure disclosed to investors."  Further, in determining whether the allegations were sustainable, the SEC conducted an extensive analysis of the fund's specifically quantifiable characteristics.  *Id.* at *14-29.  Second, in *Evergreen*, the Plaintiff alleged that the fund had violated specific quantifiable investment policies.  *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 705 F. Supp. 2d 86, 92 (D. Mass. 2010).  Also, to the extent that the District of Massachusetts court found that Evergreen's more generic statements of investment objectives were actionable, such a finding directly conflicts with this Court's pronouncements in *In re TCW/DW N. Am. Gov't Income Trust Sec. Litig.*, 941 F. Supp. at 338.  *See infra* Section 3.

Plaintiff failed to allege an actionable misrepresentation because he did not "aver facts showing that the investments' actual quality – *in the sense used in the prospectuses* – was in fact otherwise." *Id*. at 376 (emphasis added). Plaintiff claims to have remedied this pleading deficiency, Opp. at 14, but his efforts are far short of the mark for several reasons.

Plaintiff's allegation that "more than a quarter of the Fund's holdings were . . . *subprime* MBS, which by mid-2006 were widely recognized as risky, unsecure and of low quality" is in fact not new. Opp. at 15 (citing SAC ¶¶ 42, 48-59, 135); *compare with* Am. Compl. ¶ 39 ("[M]uch of [the portfolio] w[as] comprised of risky subprime mortgage related assets… ."). As before, Plaintiff fails to allege facts plausibly suggesting that any specific security held by the Fund failed to meet the Registration Statement's meaning of "high quality" – *i.e.*, that any of the bonds was not rated investment grade. *See Yu*, 686 F. Supp. 2d at 376.

Likewise, the Court previously rejected Plaintiff's argument that "[b]y the beginning of the Class Period [July 1, 2005], there were . . . external market indicators suggesting that MBS, and subprime MBS in particular, were increasingly unstable and risky." Opp. at 15.[6] "Plaintiffs cannot state a claim that defendants misled them as to information readily available in the public domain because the law imputes knowledge of such market trends to the reasonable investor." *Yu*, 686 F. Supp. 2d at 377 (citing *Landmen Partners Inc. v. Blackstone Group, L.P.*, 659 F. Supp. 2d 532, 545 (S.D.N.Y. 2009)).

Finally, Plaintiff alleges that State Street's "management" was "presented with and exchanged information and opinions, no later than early 2007, which discussed the increased risk in mortgage-related and/or mortgage-backed securities." SAC ¶ 136. But merely alleging that State Street knew that the bonds had "increased risk" does not translate into the bonds not being

---

[6] *See* SAC ¶¶ 43-57 (identical to Am. Compl. ¶¶ 40-55).

"high quality," particularly given their high credit ratings. Indeed, Plaintiff concedes it was not until the summer of 2007 that State Street purportedly became aware "that the ratings associated with mortgage-related securities were not indicative of their quality." SAC ¶¶ 136-137. These are openly hindsight allegations that focus on the market events that occurred in the summer of 2007, not the truth of the Fund's disclosures at the time they were made.[7] By the time of its Annual Report for the fiscal year ending August 31, 2007, State Street explicitly disclosed that YPF had experienced negative performance due to its exposure to subprime mortgages and the housing market. *See* Skinner Decl., Ex. D at 6, 30. Accordingly, the Court should affirm its previous rejection of Plaintiff's claim relating to the "high quality" phrase in YPF's investment objective. *See, e.g.*, *Freidus v. ING Groep N.V.*, No. 09 Civ. 1049 (LAK), 2010 WL 3554097, at *9 (S.D.N.Y. Sept. 14, 2010) (dismissing Section 11 and 12 claims based on ING's statement that bonds backed by Alt-A and subprime mortgages were "relatively high quality").

### 4. YPF's Investment Objective of Seeking "Liquidity" Was Not False or Materially Misleading

Plaintiff's allegation that the Fund's stated objective of "high current income and liquidity" was materially false and misleading likewise relies on hindsight. *See* SAC ¶¶ 128-132. Plaintiff alleges that State Street acknowledged internally "by no later than the summer of 2007" that "liquidity risk had become a 'material risk' for the portfolios and that even the AA rated mortgage-related securities were 'very illiquid.'" SAC ¶ 128; Opp. at 17.

As an initial matter, none of Plaintiff's allegations supports a claim that the Fund's investment objective of seeking "liquidity" was false and materially misleading "throughout the

---

[7] *See N.J. Carpenters Vacation Fund v. Royal Bank of Scotland*, No. 08 CV 5093 (HB), 2010 WL 1172694, at *14 (S.D.N.Y. Mar. 26, 2010); *Landmen*, 659 F. Supp. 2d at 539-40; *In re Alliance Pharm. Corp. Sec. Litig.*, 279 F. Supp. 2d 171, 183 (S.D.N.Y. 2003) ("[W]hen subsequent events make an effective registration statement misleading, section 11 does not apply.") (citations and quotation marks omitted).

Class Period," which begins July 1, 2005. *See* SAC ¶¶ 1, 127 (alleging that "throughout the Class Period" YPF became increasingly invested in mortgage-related securities that had "a great risk of becoming illiquid"); *see also In re Alliance Pharm. Corp. Sec. Litig.*, 279 F. Supp. 2d at 183. Moreover, once the crisis hit in the summer of 2007, State Street made precisely such a disclosure, which Plaintiff ignores, describing the market conditions and stating: "The combination of these events resulted in severe illiquidity in this sector which negatively impacted the Fund's performance during the period." *See* Skinner Decl. Ex. D at 6. State Street thus explicitly disclosed the risk of illiquidity that Plaintiff claims was concealed.[8]

Plaintiff's "liquidity" misrepresentation claim also fails because he wrongly construes the Fund's goal of seeking "high current income and liquidity" to somehow mean that the Fund would "invest[] in liquid securities." SAC ¶133; *see also* Opp. at 17 ("Defendants Misrepresented the Fund's Investment Objective Because the Securities It Held Were Not 'Liquid'"). In fact, the phrase seeking "high current income and liquidity" refers to providing investors with monthly income and the ability to transact in and out of the Fund without creating substantial price variations. Defs.' Mem. at 15. Plaintiff makes no allegation that the Fund failed to pursue (or achieve) its liquidity objective in this manner, nor could he.

Accordingly, Plaintiff has failed to state a claim that the phrase "seeking high current income and liquidity" was in any way false or materially misleading.

**5.      The Phrase "Diversified Portfolio" in YPF's Investment Objective Was Not False or Materially Misleading**

In the Opposition, Plaintiff takes the counterintuitive position that the term "diversified" cannot mean what the SAI says it means: "securities of any single issuer limited to 5% or less of

---

[8] As the also Court has noted, "[i]nvestors are presumed to be aware of public information concerning market trends." *Yu*, 686 F. Supp. 2d at 377 (citations omitted).

- 8 -

each of the Fund's total assets, and to not more than 10% of the outstanding voting securities of such issuer." Skinner Decl. Ex. B ("SAI") at 3 (citing Investment Company Act, 15 U.S.C. § 80a-5(b)(1) (2007)). Plaintiff instead attempts to argue that "diversified" means something that it could not possibly have meant given the Fund's disclosed concentration in ABS, *i.e.*, invested in various types of securities across industry sectors. *See* Opp. at 13.

But Plaintiff cannot and therefore makes no attempt to reconcile his definition of "diversified" with the total mix of information provided to investors about the Fund, such as the fact that over 60% of the portfolio was concentrated in a *single sector*. *See, e.g.*, Skinner Decl. Exs. H and I (YPF quarterly reports disclosing that the Fund was 69.4% and 60.4% ABS, respectively). Indeed, the Registration Statement explicitly cautioned that the Fund was "subject to greater risk of loss as a result of adverse economic, business or other developments than if it [were] diversified across different industry sectors." Prospectus at 19. Furthermore, the Fund's statement that it *may* invest in a number of different categories of debt instruments was merely pre-authorization for potential investments. *See id*. at 4. In the context of this total mix of information, no reasonable investor could have interpreted "diversified" to mean what Plaintiff says it did.[9]

As a result, upon a complete reading of the Registration Statement, there is only one reasonable alternative: that the Fund's definition of "diversified" was, as the SAI disclosed, a distribution of assets across different issuers. Plaintiff does not allege, nor could he, that the Fund was not diversified under this definition. Thus, Plaintiff has failed to state an actionable claim that the "diversified portfolio" phrase within YPF's investment objective was false or

---

[9] Plaintiff's assumption that the SAI's definition of "diversified" is unworkable because the phrase "diversified portfolio" appears only in the investment objectives of two of the twenty-four funds likewise fails. Opp. at 13-14. Plaintiff makes no attempt to explain why differences in the funds' aspirational goals have any bearing on the meaning of a defined term – "diversified."

materially misleading.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007).

**6.     Plaintiff's Alleged Losses Are Not Causally Connected to the Alleged Misstatements or Omissions**

In its opening brief, State Street explained that even if the Registration Statement had disclosed the information that Plaintiff claims was concealed, the price of YPF shares would not have been affected because mutual fund share prices are not determined by trading in a secondary market:  Loss causation cannot exist.  Defs.' Mem. at 24-26.  State Street recognizes that other courts have reached different conclusions on the issue of loss causation in the mutual fund context, *see id.* at 26, but respectfully submits that those courts did not fully consider the text of the statute, as well as its legislative history, which demonstrates that Congress intended to impose liability under these sections only for misrepresentations that actually affect the price of a security.  *See id.* at 22, 29-30.[10]  Nor has Plaintiff made any effort to refute State Street's points about the statute's text and legislative history.  Whether it would "insulate mutual fund companies from claims for a wide range of material misrepresentations" or not, *see* Opp. at 28 (internal quotation and citation omitted), the Court is not compelled to provide a private remedy where one was not intended.  *See Aaron v. SEC*, 446 U.S. 680, 695-96 (1980).[11]

## CONCLUSION

For the reasons provided above, as well as those set forth in State Street's Opening Brief, the Second Amended Complaint should be dismissed with prejudice.

---

[10] It is worth noting that in *Owens v. Gaffken & Barringer Fund, LLC*, a case replied upon by Plaintiff, *see* Opp. at 28, neither the parties nor the court raised the arguments raised here by State Street with respect to loss causation.  No. 08 Civ. 8414 (PKC), 2009 WL 3073338, at *8 (S.D.N.Y. Sept. 21, 2009).

[11] State Street responds to Plaintiff's arguments regarding the statutory seller status under Section 12(a)(2) of State Street Corporation, SSgA, and individual defendants Leahy, Ross and Swanson, Opp. at 20-22, by reference to its previous Motion to Dismiss and Opening Brief.  *See* Defs.' Mem. in Support of Mot. to Dismiss dated Mar. 11, 2009, at Section III (Doc. No. 37 in No. 08 Civ. 8235); Defs.' Mem. at 9 n.9.

- 11 -

Dated:  November 9, 2010

Respectfully submitted,

ROPES & GRAY LLP


/s/ John D. Donovan, Jr.
John D. Donovan, Jr.
Harvey J. Wolkoff
Robert A. Skinner
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000
john.donovan@ropesgray.com
harvey.wolkoff@ropesgray.com
robert.skinner@ropesgray.com

*Attorneys for Defendants*
*State Street Corporation, State Street Global*
*Advisors, SSgA Funds, Peter G. Leahy, James*
*Ross and Mark E. Swanson*

- 12 -

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 9, 2010, I caused a true and correct copy of the foregoing document to be served upon all counsel of record via the ECF system.

      /s/ Allison M. Boscarine
      Allison M. Boscarine